# IN THE COURT OF APPEALS OF IOWA

No. 13-1848
Filed March 25, 2015

**JOHN WEST SICKELS,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Woodbury County, James D. Scott,

Judge.


A defendant appeals from the denial of his application for postconviction

relief. **AFFIRMED.**


Kent A. Simmons, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney

General, Patrick Jennings, County Attorney, and Andrew B. Prosser, Assistant

County Attorney, for appellee State.


Considered by Vogel, P.J., Doyle, J., and Goodhue, S.J.*  Scott, S.J.,

takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, S.J.**

John West Sickels appeals from the decision of the trial court denying his request for postconviction relief.

## I. Background Facts and Proceedings

James Christiansen and John West Sickels, the Chief of Police and Assistant Chief of Police in Creston, respectively, were convicted of second-degree sexual abuse by a jury after a change of venue from Union County to Woodbury County. The incident took place at the Crestmoor Country Club in Union County after its closing time on April 28, 2008. The victim was a bartender, who will be referred to as L.S.

Sexual intercourse was not denied by Sickels, but he claimed L.S. consented. Sickels appealed and the conviction was affirmed but Sickels was granted a new restitution hearing and his claim of ineffective assistance of counsel was preserved for postconviction relief. *See State v. Sickels*, No. 09-0897, 2010 WL 4792316, at *11 (Iowa Ct. App. Nov. 24, 2010). The facts were detailed in that opinion and will be reiterated only where relevant to the present claims that Sickels has raised in his postconviction relief proceeding.

Sickels filed his request for postconviction relief in Union County. On the State's motion the venue was changed to Woodbury County, where the hearing was held.

## II. Venue

Preliminarily, Sickels contends the hearing on the request for postconviction relief should have been held in Union County rather than Woodbury County. He points out that the incident took place and the charge was

filed in Union County. The trial was held in Woodbury County, and typically the sentencing would have been in Union County, but apparently out of convenience, Sickels was sentenced in Polk County.

The pertinent statute provides that an application for postconviction relief shall be "heard in, and before any judge of the court in which the conviction or sentence took place." Iowa Code § 822.7 (2013). Woodbury County was where the conviction took place and was an appropriate venue for the postconviction hearing to have been held. Sickels does not dispute the statutory language but asserts it was absurd to hold the postconviction hearing in Woodbury County.

Even though statutory language may be clear and unambiguous, a statute is not to be interpreted to provide an absurd result. *State v. Klawonn*, 688 N.W.2d 271, 276 (Iowa 2004). There is nothing absurd about placing the venue of the postconviction hearing where the conviction had taken place as provided by the statute. Sickels admits he cannot show prejudice from the matter having been heard in Woodbury County. Woodbury County was an appropriate venue for hearing Sickels's application for postconviction relief.

### III. Ineffective Assistance of Counsel

The gravamen of Sickels's application is the assertion that trial counsel was ineffective.

#### A. Error Preservation

An exception to traditional error preservation exists when the claim is ineffective assistance of counsel. *State v. Fountain*, 786 N.W.2d 260, 262-63 (Iowa 2010).

**B. Standard of Review**

Appeals from denial of postconviction relief are ordinarily reviewed for corrections of errors at law, but when a constitutional issue such as a claim of ineffective assistance of counsel is involved, it is reviewed de novo. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

**C. Merits**

To prevail on a claim of ineffective assistance of counsel, the claimant must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2011). A claim of ineffective assistance must overcome the presumption that counsel is competent. *Tyler v. State*, 352 N.W.2d 683, 685 (Iowa 1984). An accused is not entitled to perfect representation, but only that level of representation that is within the normal range of competency. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000). Strategic choices made after proper investigation are virtually unassailable. *Ledezma*, 626 N.W.2d at 143. In reviewing counsel's effectiveness, we do not take on the role of a Monday morning quarterback and view the proceedings with 20/20 hindsight. *Fryer v. State*, 325 N.W.2d 400, 414 (Iowa 1982). For relief to be granted there must be a determination that but for ineffective assistance there is a reasonable probability the result would have been different. *Ledezma*, 626 N.W.2d at 145.

There are four basic areas where Sickels claims counsel was ineffective. The factual background and the validity of each assertion will be considered separately.

**1.** Sickels and Christiansen were tried jointly. Sickels was convicted as a principal, and Christiansen was convicted as an aider and abettor. Sickels's trial counsel did not file a motion to sever. Sickels now contends that the failure to do so constituted ineffective assistance of counsel. His major objection is that Christiansen turned out to be a poor witness aside from the content of his testimony. He apparently spoke haltingly, unconvincingly, and without the conveyance of conviction or certainty. Sickels now states that he knew all along Christiansen would not be a good witness, but counsel failed to make an inquiry.

Apparently, both Christiansen's and Sickels's counsel were surprised at Christiansen's poor performance, or so they stated in the postconviction hearing record. If Sickels was so certain of Christiansen's inability to communicate as a good witness, why he did not express his concern to his counsel is not explained. How Christiansen's poor performance adversely affected the outcome of the trial is only left to speculation. Generalizations do not meet the requirements to succeed in an ineffective-assistance-of-counsel claim. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994).

There were taped interviews of Christiansen that contained *Bruton*[1] materials that arguably could have been excluded if Sickels had been tried separately. Trial counsel was aware the tapes would be played and would be detrimental, but he also determined the tapes contained helpful information of

---

[1] In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court held a defendant is denied the constitutional right of confrontation where a codefendant does not testify at the joint trial and is therefore unavailable for cross-examination, but the codefendant's confession is admitted.

special benefit to Sickels. Furthermore, it was quite likely that the tapes would be admitted even if Sickels had been tried separately as a statement of a co-conspirator in furtherance of Sickels and Christiansen's efforts to conceal the crime. *See* Iowa R. Evid. 5.801(d)(2).

Sickels cites *State v. Cromer*, 765 N.W.2d 1, 8-10 (Iowa 2009), to support an assertion that the taped conversations between L.S. and Christiansen should have been objected to and not admitted. The similarities between the two situations are that *Comer* involved a tape of a conversation between an alleged perpetrator and the victim, and a law enforcement officer was involved in coaching the witness, but the similarities end there. *See* Comer, 765 N.W.2d at 3-4. In *Cromer*, the victim and the alleged perpetrator were longtime friends and the victim was extensively coached by law enforcement to make an emotional appeal in an effort to satisfy her understanding of what had happened during the victim's alleged blackout spell. *Id.* at 9. That tape recording was considered coercive. *Id.* Sickels has failed to point out how the taped conversation between Christiansen and L.S. is in any way coercive.

Trial counsel had weighed the pros and cons of a joint trial. He correctly believed Christiansen would testify and most of what he said would be helpful to Sickels. He knew Christiansen was the only one who could corroborate Sickels's portrayal of an intoxicated and flirtatious L.S., who allegedly flashed the two officers that evening after they were the only remaining customers at the club. Counsel had the impression that Sickels believed Christiansen's testimony would be helpful and wanted a joint trial. Counsel also desired to keep the two parties together because of the fear that Christiansen would work a deal with the

prosecutor and testify against Sickels. Counsel's selection of a strategy cannot be considered ineffective assistance simply because it proved unsuccessful. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984).

**2.** Trial counsel's defense effort was primarily based on the assertion that L.S., in an intoxicated condition, had consented to sexual intercourse but because of her fear of losing her job, and more importantly, the anticipated reaction of her abusive live-in boyfriend, she ultimately decided she would deny she had consented to the act. Sickels does not contend trial counsel failed to pursue that avenue of defense, but contends he should have done more and pursued it more vigorously and in greater detail. Specifically, Sickels contends counsel should have done more to establish L.S.'s alcohol problem and the boyfriend's violent tendencies. Both contentions were well established. Counsel hired an investigator, and extensive depositions were taken and offers of proof made. Counsel is obligated to make a reasonable investigation, but the duty to investigate is not unlimited and there is no requirement to interview every potential witness. *Ledezma*, 626 N.W.2d at 145.

Centered on missing whiskey on the date of the incident and the boyfriend's admission that he drove by the club after closing time, Sickels contends counsel should have specifically argued that the boyfriend must have entered the club that night after closing and discovered evidence L.S. had been unfaithful, gotten into a fight with L.S., drank the alcohol, and then both he and L.S. left the club, leaving it in disarray and unlocked. There was no evidence that the boyfriend entered the club on the night of the offense or that he was aware of the unfaithfulness of L.S. until approximately one week later. Argument is a

matter of strategy, and trial counsel's argument was forceful, exhaustive, and directed the jury to those facts in the record which supported the defense's strategy. Strategy employed after a complete investigation is practically unassailable. *Id.* at 143.

**3.** A motion in limine was filed by Sickels's counsel in an effort to restrict the State from offering an alleged prior bad act. The prior bad act referred to a previous incident at the Twilight Zone, a bar in Creston, where Sickels had allegedly repeatedly asked a female bartender to flash her breasts. The State had also filed a motion in limine seeking to keep witnesses from testifying generally to Sickels's character. At hearing the court determined that Sickels's character traits of peacefulness and nonviolence were pertinent since the charge involved an assault.

At the same hearing the court sustained Sickels's motion in limine as to the incident at the Twilight Zone. However, in doing so the trial court stated,

> [I]f the defendants introduce such character evidence it may open the door to specific evidence of conduct offered by the prosecution to rebut the same under the rules 5.404(a)(1) and 5.405 (a). It may open the door to evidence of the incident of the Twiligth Zone in cross-examination or rebuttal. Testimony of any other character traits of the defendant is not permitted under rule .404.

The court went on to state that if the prosecutors thought that the door had been opened, they were to advise the court before proceeding with evidence of the Twilight Zone incident.

At Sickels's request, if not insistence, two character witnesses were called and testified Sickels had a reputation for peacefulness and nonviolence. On cross-examination, without objection, the prosecutor briefly asked the witnesses

if they were aware of Sickels's earlier behavior at the Twilight Zone. The first witness was not aware of the incident, but testified the incident would not change his opinion about Sickels. The second witness testified he was aware of the incident from speaking with Sickels, but was not sure it actually occurred and further stated the incident would not change his opinion. The prosecutor had not requested permission from the court to go into the subject.

The State offered the Twilight Zone bartender as a witness in rebuttal to give her version of what had happened, but the trial court ruling remained the same, and she was not permitted to testify. Sickels contends the court's later ruling disallowing the Twilight Zone bartender from testifying indicates the court would have sustained the objection to the prosecutor's questions asked of the character witnesses. That conclusion does not follow.

When a character trait is put into evidence, specific incidences of conduct are admitted on cross-examination. Iowa R. Evid. 5.405(a). The prosecution is only required to show a good faith basis for the incident raised. *United States v. Monteleone*, 77 Fed. 3d 1086, 1088-90 (8th Cir. 1996). The State had a good faith belief based on the offer of proof of the female bartender's testimony. The objection, if made, would have been overruled. Counsel is not ineffective for failing to make a meritless objection. *See State v. Brubaker*, 805 N.W2d, 164, 171 (Iowa 2011). As a practical matter, counsel cannot anticipate opposing counsel's question and object to it, nor can the court rule on it, until it has been verbalized. Generally, objections are not directed to exclude a question, but to the answer the question it is attempting to elicit. Trial counsel correctly believed the incident at the Twilight Zone would have no impact on the character

witnesses' opinions of Sickels's traits of peacefulness and nonviolence and therefore no reason to object to the question.

Finally, Instruction No. 5 informed the jury that "[s]tatements, arguments, questions, and comments" propounded by the attorneys were not evidence and should not be considered as such. In Instruction No. 14, the court specifically instructed the jury that questions and answers about the Twilight Zone incident could only be used to determine if the character witnesses really knew about Sickels's reputation for peacefulness and for no other purpose, and whether Sickles engaged in the acts alleged at the Twilight Zone "is not evidence that he committed the crime charged in this case."

**4.** Both the State and Sickels were aware that within one year prior to the incident, L.S. had sat on a customer's lap after the club had closed for the night and kissed him. After the closing the two left the club and L.S. kissed him again in the parking lot. The customer's estranged wife was waiting in the parking lot and observed the last kiss. The State filed a motion in limine to have the incident excluded under Iowa Rule of Evidence 5.412, the rape-shield law. Sickels contends his counsel was ineffective in failing to get the evidence admitted.

The testimony of the customer and his wife were presented in an offer of proof. The State argued that it was past sexual behavior under rule 5.412 and therefore was not admissible. L.S.'s boss found out about the incident from the customer's estranged wife, and when confronted, L.S. maintained that the customer had instigated the contact. The customer, however, explained that L.S. had instigated and prolonged the contact. Sickels's counsel contended L.S.'s

denial to her boss made the entire incident admissible as bearing on L.S.'s credibility the same as if a false claim of prior sexual abuse had been made. *See State v. Baker*, 679 N.W.2d 7, 10 (Iowa 2004) (holding a prior false claims of sexual activity do not fall within the coverage of the rape-shield law).

After the offer of proof the trial court ruled that testimony of the activities of L.S. and the customer were not admissible under the rape shield law, stating L.S. did not make a claim of sexual abuse as against the customer—that L.S., if anything, had made a claim of inappropriate conduct on the behalf of the customer. The issue was raised on appeal and the appellate court found the record did not show L.S. had made a prior false claim. The court stated Sickels "did not offer evidence that L.S. made a prior claim of any kind about the incident." *Sickels*, 2010 WL 4792316, at *9. Sickels now contends that both the trial court and the appellate court did not correctly apply the law to the existing facts. A postconviction proceeding is not intended to provide a vehicle to relitigate an issue previously litigated or inadequately raised in the prior proceeding. Iowa Code § 822.8 (2013). The principle of res judicata bars relitigation of issues raised on appeal in a postconviction-relief hearing. *Holmes v. State*, 775 N.W.2d 733, 735 (Iowa 2009).

Even if this matter was not barred by res judicata, Sickels's contention is without merit. He primarily relies on *State v. Albert*, 722 N.W.2d 402 (Iowa 2006). In *Albert* the defendant was accused of sexual abuse and was not permitted to put into evidence the alleged victim's reaction when she had been discovered swimming and hugging a gentleman while they were both in a naked condition. 722 N.W.2d at 405-06. The activity was discovered by the alleged

victim's boyfriend's brother, and she immediately exited the water and stated, "[T]hank God you saw me. I didn't know what to do out there. . . . I couldn't get away from him." *Id.* at 405. At her deposition, she recounted the event but never mentioned any force was involved in the naked swimming event. *Id.* 411. The court considered the excuse based on an allegation of force made to the boyfriend's brother to be a false accusation of sexual activity not covered by the rape shield law. *Id.* at 411. After doing the traditional Iowa Rule of Evidence 5.403 prejudice analysis, the court found the incident to be admissible. *Id.*

The instant case is easily differentiated from *Albert* because L.S. never made a false claim that the customer used any physical force to initiate or perpetuate the sexual activity. L.S. and the customer differed in only who initiated the contact and who perpetuated it.

In summary, Sickels has not established that his trial counsel was ineffective in any manner.

**AFFIRMED.**