# IN THE COURT OF APPEALS OF IOWA

No. 14-1506
Filed September 10, 2015

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**MICHAEL DAVID CAIN,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Clayton County, George L. Stigler, Judge.

A defendant appeals his conviction for sexual abuse in the third degree. **AFFIRMED.**

Scott J. Nelson, Dubuque, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Alan Heavens, County Attorney, and Ry A. Meyer, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, P.J.**

The State charged Michael David Cain with third-degree sexual abuse in connection with sex acts he performed on an underage girl. *See* Iowa Code § 709.4(2)(c)(4) (2011). During trial, Cain moved to exclude a recording of a telephone conversation he had with the girl's father. The district court denied the motion and allowed the recording to be played to the jury. A jury found Cain guilty.

On appeal, Cain contends the district court abused its discretion in admitting the recording. He also challenges a jury instruction relating to the date the crime was committed.

## I.    Recording

A Clayton County deputy sheriff who was the primary investigator on the case determined Cain was "53, 54, somewhere in there" and the girl on whom he committed a sexual act was fourteen. He interviewed the parents of the girl and, immediately following the interview, recorded a conversation the girl's father had with Cain. During the thirteen-minute conversation, Cain initially denied committing a sex act but later acknowledged "some shit went on." He also said he was not in his "right mind," he was "so disgusted" he could "hardly live with" himself, and he was "so frigging lost" he did not "know what to do."

Cain contends he was coerced into making the admissions and, accordingly, the district court should have exercised its discretion to exclude the recording pursuant to Iowa Rule of Evidence 5.403. *See State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013) (reviewing admissibility of evidence for abuse of discretion). The rule states, "[a]lthough relevant, evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Iowa R. Evid. 5.403.

The Iowa Supreme Court applied this rule under similar circumstances in *State v. Cromer*, 765 N.W.2d 1 (Iowa 2009). There, the court examined whether Cromer's trial attorney was ineffective in failing to object to the admission of an allegedly coercive fifty-minute recorded conversation between Cromer and the complaining witness. *Cromer*, 765 N.W.2d at 8. The court reaffirmed precedent holding "coercion used to obtain an admission from an accused is . . . relevant to the balancing of the probative value and the prejudicial effect under Iowa Rule of Evidence 5.403." *Id.* (citing *State v. Quintero*, 480 N.W.2d 50, 52 (Iowa 1992)). As the court explained, "Coercion diminishes the reliability of an admission because 'the law has no way of measuring the improper influence or determining its effect on the mind of the accused.'" *Id.* at 8-9.

The court proceeded to examine the conversation between Cromer and the complaining witness. *Id.* at 9-10. The court found the conversation "emotionally charged," with the "effect of this emotion on Cromer . . . apparent over the course of the conversation." *Id.* at 4-5, 9, 11. The complainant "repeatedly appealed to their friendship, recounted her feelings of shame, and told of her nightmares and inability to sleep." *Id.* at 9. The witness "also forcefully exclaimed she would never have consented to intercourse." *Id.* Additionally, police officers who were present during the conversation created a "coercive environment" by "coaching" the complaining witness throughout the phone call and gesturing to keep her talking when conversation subsided. *Id.* at

9. These factors "tended to make the statements less probative of the ultimate issue." *Id.*

This case shares similarities with *Cromer*. Specifically, the girl's father appealed to his friendship with Cain in attempting to elicit an admission and the investigating deputy was present during the conversation. But the father was not distraught, as the complaining witness was in *Cromer*, and the conversation lasted less than fifteen minutes rather than fifty minutes. Accordingly, we conclude the probative value of Cain's statements was not diminished by the type of coercion present in *Cromer*.

Next, we must balance the probative value of the statements against the potential for unfair prejudice. Cain suggests the conversation confused the jury. He cites a reference in the recorded conversation to a different date than the charged date. *See Cromer*, 765 N.W.2d at 10 (noting "risk of confusion of issues"). While Cain did indicate the abuse may have occurred on a different date, Cain's admissions related to a single episode of abuse on a single date. Accordingly, there is scant likelihood the jury would have been confused by the date reference.

Another component of an unfair prejudice analysis is the likelihood the conversation would have "created a danger for the jury to convict . . . based on the contents of the emotional conversation." *Id.* As noted, the girl's father was stoic. He matter-of-factly asked Cain to explain what happened and why. His conversation with Cain was far less emotionally fraught than the duly admitted testimony of his daughter, who provided a detailed description of Cain's acts.

In contrast, the complaining witness in *Cromer* asked the defendant whether he would view the incident as "date rape" if it happened to his sister. She repeatedly told Cromer "any decent person would have taken her home," and she "began to cry" while declaring she "should have been safe" with him. *Id.* at 4-5.

We conclude the prejudicial effect of the recording did not substantially outweigh its probative value. Accordingly, we further conclude the district court did not abuse its discretion in admitting the recording over Cain's objection.

## II.      *Jury Instruction*

The State charged Cain with assaulting the girl "on or about" January 20, 2013. As noted, Cain alluded to a different date—February 14—in the recorded conversation. During deliberations, the jury sent the court the following question: "What does on or about time frame mean, one month, two months, a few days?" After conferring with counsel, the court gave the jury the following supplemental instruction:

> When a charging instrument charges a specific date, as here the charge date is January 20, 2013, that does not require that the State prove that the event occurred on that specific date. It is simply a device by which it alerts an individual to a particular event and if you find that the State has met its burden, but you're unable to say whether it occurred on a specific date, if it occurred in a one or two-month time period on either side of that date, that is sufficient. It is the event and not the date that controls.

Cain asserts by

> giving the one to two months on either side instruction, the District Court allowed the jury to merge [the complaining witness's] specific allegations into [his] recorded statement and treat the two separate events as one, which clearly and obviously lead to the jury's finding of guilt by linking [his] amorphous statement to [the complaining

witness's] allegations, even though as a matter of proof, there is clearly no connection between the two.

Our "general rule [is] that the State is not required to prove the precise time and place of a crime." *State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003) (citing *State v. Griffin*, 386 N.W.2d 529, 532 (Iowa Ct. App. 1986)); s*ee also State v. Washington*, 356 N.W.2d 192, 196 (Iowa 1984); *State v. Brown*, 400 N.W.2d 74, 76-77 (Iowa Ct. App. 1986). "[U]ncertainty as to the precise date is immaterial." *State v. Laffey*, 600 N.W.2d 57, 60 (Iowa 1999).

The district court's supplemental instruction explaining "on or about" was a correct statement of the law. *See Brown*, 400 N.W.2d at 76-77 ("The date fixed in the indictment or information for the commission of a crime is not material, and a conviction can be returned upon any date within the statute of limitations, absent a fatal variance between the allegations and proof.").

We affirm Cain's judgment and sentence for third-degree sexual abuse.

**AFFIRMED.**