# IN THE COURT OF APPEALS OF IOWA

No. 21-1797
Filed February 8, 2023

**THOMAS GUY HENDERSON,**
 Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
 Respondent-Appellee.

_____

Appeal from the Iowa District Court for Carroll County, Adria Kester, Judge.

An offender serving two life sentences appeals the denial of postconviction relief. **AFFIRMED.**

Jesse A. Macro Jr. of Macro & Kozlowski, LLP, West Des Moines, for appellant.

Brenna Bird, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**

A jury convicted Thomas "Tommy" Henderson in the brutal killings of Tammie Devore and her adult son Karl. On direct appeal, we affirmed his convictions. *See State v. Henderson*, No. 15-1166, 2017 WL 108280, at *1 (Iowa Ct. App. Jan. 11, 2017). Henderson then petitioned for postconviction relief (PCR), contending he received ineffective assistance when his attorney did not call two alibi witnesses. The district court denied relief, holding counsel breached no duty because neither witness "was able to provide an alibi for the period in question." After reviewing the record anew, we likewise find Henderson cannot show his attorney was constitutionally remiss in not calling those witnesses.[1]

I.      **Facts and Prior Proceedings**

Neighbors discovered the bodies of Karl and Tammie DeVore in Tammie's home on Sunday, May 18, 2014. Neither had been seen alive since that Friday. As police sorted through the crime scene, they saw that Tammie was midway through getting a tattoo when she was beaten to death. That tattoo-in-progress was one clue connecting Henderson to her murder. When police later searched his bedroom closet, they found an amateur tattoo kit with ink and needles like those left behind at the murder scene.

In a second significant connection, criminalists found Henderson's DNA on the knife handle and Yoshi Blade[2] used to fatally stab Karl Devore. On top of that

---

[1] As a default, we review PCR rulings for correction of errors at law. *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022) (citation omitted). But because Henderson raises the constitutional issue of ineffective assistance of counsel, our review is de novo. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).
[2] Yoshi Blade is the commercial name of a ceramic knife. Investigators found the tip of that blade lodged in Karl's skull after his murder.

incriminating evidence, investigators recovered pieces of Karl's wallet near Henderson's apartment complex. When interviewed by detectives, Henderson admitted knowing Tammie and having gone to her home several times to buy marijuana. Viewing that proof in a light favorable to the verdicts, on direct appeal we found sufficient evidence to sustain the two first-degree murder convictions. *Henderson*, 2017 WL 108280, at *5.

In the PCR proceedings, Henderson alleged that he received ineffective assistance of counsel because his attorney failed to present "exculpatory evidence" from two witnesses: his mother, Delores, and his sister-in-law, Sharon. To bolster his allegation, he offered their depositions, taken before his 2015 murder trial. Both women described Tommy and Delores living in a two-bedroom apartment upstairs from Sharon and her husband in May 2014. Sharon recalled that over the weekend of May 16 through 18, she had coffee with Tommy on Friday morning and did not see him again until supper that evening. They kept the same schedule on Saturday. On Sunday, Sharon did not see Tommy until closer to lunch time. His mother, Delores, recalled spending time with Tommy that weekend, but could not account for his whereabouts after she retired to her own bedroom around 8:00 or 9:00 p.m.

Henderson also called both women to testify at the PCR hearing. Delores portrayed her son as "very quiet" and "shy," essentially a "loner" who "stayed at home most of the time," but was "very caring" and non-violent. Sharon similarly described Henderson as "very quiet," a "homebody," and a "really nice guy."

At that same hearing, the State called defense counsel Jason Dunn to address Henderson's allegation of ineffective assistance. Dunn testified that he

interviewed both Delores and Sharon as potential defense witnesses, but made a strategic decision not to call them to the stand. He explained the difficulty in establishing an alibi under the circumstances: "First off, we didn't have a set span of time with which we knew these murders happened, and neither Delores nor Sharon . . . could provide us a complete alibi or complete knowledge of Tommy's whereabouts for that entire weekend, basically." Dunn was also reluctant to call them as witnesses because they "talked about Tommy's temper and that was something we didn't want to open any door to or even have as part of the discussion."

The district court rejected Henderson's claim that Dunn was constitutionally remiss in not calling either family member as a witness. The court decided that Dunn pursued a valid strategy:

> There is nothing in the record to show that trial counsel's actions regarding the failure to call Sharon Henderson and Delores Henderson as witnesses at trial amount to ineffective assistance. Neither was able to provide an alibi for the period in question. Their testimony could have opened the door to much more damaging testimony, outweighing any benefit from their testimony. Likewise, the record is clear that Dunn investigated the case and advanced sound arguments at trial.

Henderson appeals the PCR denial.

## II.    Analysis

To prove ineffective assistance, Henderson must show his attorney failed to perform an essential duty, and that failure caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). On the performance prong, we ask whether counsel acted within the normal range of competency, starting from the presumption that they did. *See State v. Cromer*, 765 N.W.2d 1, 7–8 (Iowa 2009).

Henderson "must rebut the presumption of competence by showing a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019) (cleaned up). Henderson must prove more than mere "improvident trial strategy, miscalculated tactics, mistake, carelessness or inexperience as viewed with the clarity of hindsight." *Cromer*, 765 N.W.2d at 8 (cleaned up). On the prejudice prong, Henderson must show his attorney's errors were so serious as to deprive him of a fair trial. *Strickland*, 466 U.S., at 687. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694.

Henderson insists attorney Dunn had an essential duty to call Delores and Sharon as defense witnesses. He recognizes neither could provide "an absolute airtight alibi." But he contends their recollections would have promoted the position that he could not have committed the crimes "because he was at home." That extra oomph, in his view, would have swayed jurors to acquit.

In response, the State argues that trial counsel made "a reasonable strategic choice to decline presenting an incomplete alibi that risked opening the record to bad character evidence." Henderson downplays the risk of inviting character evidence, saying counsel could have directed the witnesses on the alibi evidence only. But the State contends that defense counsel was right to be concerned about a potential overlap between the partial alibi evidence and character traits. The State points to Henderson's mother characterization of her son as a "loner," for example, when describing how much time he spent at the apartment they shared.

After our de novo review, we reach the same conclusion as the district court. Henderson fails to show Dunn's strategic call constituted subpar performance. Dunn investigated the potential alibi witnesses and decided that their testimony could do more harm than good. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Dunn was experienced counsel and his performance was well within the standard of a reasonably competent criminal defense attorney. *See State v. Coleman,* 907 N.W.2d 124, 141 (Iowa 2018).

Because we need not reach the prejudice prong, we affirm this PCR denial without further consideration. *See State v. Russell*, 897 N.W.2d 717, 730 (Iowa 2017) ("[I]f one prong is not met, the other need not be addressed.").

**AFFIRMED.**