In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4230

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JORGE M. LOPEZTEGUI,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99-CR-106--Rudolph T. Randa, Judge.

Argued September 11, 2000--Decided October 25, 2000

Before BAUER, EVANS, and WILLIAMS, Circuit Judges.

EVANS, Circuit Judge.  Were we giving awards for creativity, novelty, or perhaps even chutzpah, Jorge M. Lopeztegui would be a serious candidate to receive one. Lopeztegui, convicted on various drug charges, wants a new trial so he can raise an entrapment defense. And the basis for the defense is quite unusual. He wants to argue that the government intentionally kept him out of jail, and because he was free, he committed the crimes.

In the spring of 1998, a Wisconsin drug enforcement agent was working with a snitch named Critton, who was talking with Lopeztegui about a drug deal. At a meeting, with Critton wired for sound, Lopeztegui agreed to sell a half a kilo of cocaine, but he had two problems: the cocaine was not readily available, and he was scheduled to be sentenced in state court the next day on an unrelated drug charge. Hearing this news, the state agent, Broeske, solved one of Lopeztegui's problems. She approached the assistant state's district attorney and asked him to request a postponement of the pending sentencing proceeding. The case was adjourned, and subsequently Critton purchased both crack and powder cocaine from Lopeztegui. The sales formed the basis of a federal indictment alleging two counts of delivery and one of conspiracy.

Prior to the start of his trial, Lopeztegui presented a pro se motion to dismiss the charges based on what he called "outrageous government conduct," alleging that Broeske, the assistant district attorney, and his own state court attorney, Michael Chernin, were in cahoots; that they conspired to postpone the state sentencing in order to complete the federal investigation. Had that not happened, he would have received a prison sentence and been behind bars unable to complete the drug deals with Critton. The district judge denied the motion, Lopeztegui went to trial, and a conviction followed on all counts.

Lopeztegui's motion for a new trial argued that newly discovered evidence provides the basis for an entrapment defense. The "evidence" is a BAPR/1 report issued by the State Bar of Wisconsin in response to a grievance Lopeztegui filed against his state court attorney, Mr. Chernin. The motion was denied and Lopeztegui appeals, raising this and two minor other issues for our review.

Rule 33 of the Federal Rules of Criminal Procedure provides that a defendant may be awarded a new trial on the basis of newly discovered evidence when that evidence (1) came to his knowledge after trial, (2) could not have been discovered sooner with due diligence, (3) is material and not merely impeaching or cumulative, and (4) would probably lead to acquittal in the event of a retrial. United States v. Woolfolk, 197 F.3d 900, 905 (7th Cir. 1999), cert. denied, 120 S. Ct. 1705 (2000). The government, in opposing Lopeztegui's motion, argues that the BAPR report is not "evidence," that Lopeztegui had actual knowledge of the facts contained in the report prior to trial, and that, in any event, nothing in the report supports an entrapment defense.

The threshold issue is whether the BAPR report constitutes evidence sufficient to trigger the application of Rule 33. The government asserts that the report merely contains the conclusions and opinions of a state bar investigator, which would not be admissible in court, and therefore the report is not "evidence." Lopeztegui counters, however, that reports and findings of public agencies are exceptions to the hearsay rule under Federal Rule of Evidence 803(8). More importantly, he really is arguing that the facts contained in the report, not the report itself, are new evidence. Clearly, the facts revealed by the investigator's interviews of Agent Broeske, the state prosecutor, and attorney Chernin would be admissible at a new trial. Thus, they constitute "evidence."

It is more difficult, however, for Lopeztegui to argue that the "facts" identified by the BAPR investigator are new evidence. Indeed, as we just noted, he filed a pro se motion to dismiss prior to trial in which he claimed that "[o]fficers of the court acted in conjunction with law enforcement by means of manipulating [d]ue [p]rocess in rescheduling defendant's date of sentencing in state court for the sole purpose to [sic] subject the defendant to an undercover investigation by law enforcement." Lopeztegui now attempts to explain this away by arguing that he initially focused his attention on his state court attorney (who was found blameless in the report) and only became aware of the extent of Agent Broeske's participation in the sentencing hearing adjournment after the BAPR report was issued. So we'll indulge Mr. Lopeztegui and consider the "evidence," under an expanded view of the word, as "new."

But even if the facts contained in the BAPR report are considered new evidence, they do not come close to supporting an entrapment defense. To prevail on an entrapment defense a defendant must prove (1) that the government induced the crime and (2) that he was not predisposed to commit it. Mathews v. United States, 485 U.S. 58, 63 (1988). Lopeztegui argues, citing United States v. Hollingsworth, 27 F.3d 1196, 1200 (7th Cir. 1994), that he was not predisposed to commit the crimes for which he was convicted because, without Agent Broeske's intervention, he would not have had the physical ability (i.e., the freedom) to do so.

Lopeztegui is guilty of a major misreading of the meaning of "predisposition." It is true that Hollingsworth recognized that predisposition goes beyond the mere willingness to commit the crime, and also includes some consideration of the defendant's ability to carry it out. Id. However, we made clear that we did "not wish to be understood as holding that lack of present means to commit a crime is alone enough to establish entrapment if the government supplies the means." Id. at 1202.

The problem for Lopeztegui is that he initiated the drug connection with Critton. In addition, he had previously been convicted of multiple drug offenses and was on bond awaiting sentencing on another drug conviction when the events in question took place. And we can imagine no scenario where a defendant with this kind of baggage would be found to be without predisposition. This is not a case in which the government planted in Lopeztegui's mind the idea to commit the crime, nor even a case in which it

supplied the means of carrying it out. Rather, by extending Lopeztegui a little rope, the government merely gave him the opportunity to carry out the crime he already wanted to commit.

Lopeztegui goes on to argue that Agent Broeske's actions constitute outrageous government conduct in violation of his due process rights. We refused to recognize that doctrine in United States v. Boyd, 55 F.3d 239, 241 (7th Cir. 1995), but Lopeztegui attempts to distinguish Boyd, pointing out that it involved prosecutorial misconduct, not "misconduct by law enforcement."

This argument is misplaced. First, we have declined to recognize the doctrine of outrageous government conduct in a case involving alleged misconduct by law enforcement. See United States v. Garcia, 89 F.3d 362, 367 (7th Cir. 1996). Second, even if we were to recognize the doctrine, it is hard to imagine how Agent Broeske's actions could be branded as "outrageous." Repeating himself, Lopeztegui argues that it was outrageous for Broeske to keep him out of prison because if he had been in prison he would not have had the opportunity to commit the crimes with snitch Critton. This argument, ludicrous as it is, has been rejected by at least one circuit court. See United States v. Baker, 63 F.3d 1478, 1500 (9th Cir. 1995) (rejecting "sentencing manipulation" claim in which law enforcement delayed arresting defendant in order to gather additional evidence).

Finally, Lopeztegui raises an ineffective assistance of counsel claim. He says his federal trial counsel (Anne Bowe) rendered ineffective assistance in two respects: (1) she failed to pursue his entrapment defense, and (2) she allegedly conceded his guilt on the two substantive delivery charges.

Direct appeal, of course, is not the preferred method of raising an ineffective assistance of counsel claim because the record may not be developed enough to make the necessary factual determinations. But having been warned of this fact during oral argument, his counsel forged on. We do not fault counsel for that choice in this case because the claim, no matter when it is raised, is totally devoid of merit.

Failing to push an entrapment defense, which would have probably gotten Ms. Bowe laughed out of court, was not ineffective. And considering the strength of the government's case--Agent Broeske's and Critton's testimony along with audio tapes of the transactions--counsel's choice to give some ground and focus the defense on the

only arguably winnable count, conspiracy--was
wise, not derelict.

AFFIRMED.

/1 BAPR is the Board of Attorneys Professional
Responsibility, an investigative arm of the State
Bar of Wisconsin.