# IN THE COURT OF APPEALS OF IOWA

No. 21-0116
Filed January 12, 2022

**CHARLES RAYMOND ALBRIGHT,**
   Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
   Respondent-Appellee.
_____

Appeal from the Iowa District Court for Franklin County, James M. Drew,

Judge.

The applicant appeals the denial of postconviction relief. **AFFIRMED.**

S.P. DeVolder of The DeVolder Law Firm, P.L.L.C., Norwalk, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney

General, for appellee State.

Considered by Tabor, P.J., and Greer and Badding, JJ.

**TABOR, Presiding Judge.**

Charles Albright appeals the denial of postconviction relief (PCR) from his convictions for first-degree kidnapping and willful injury causing bodily injury. On direct appeal, the supreme court affirmed his convictions and preserved his ineffective-assistance-of-counsel claims for later proceedings. The PCR court then rejected his eight ineffective-assistance claims. After reviewing anew Albright's challenges to his trial representation, we affirm that denial of relief.

## I. Facts and Prior Proceedings

The supreme court set out the facts of the criminal case in considerable detail. *See State v. Albright*, 925 N.W.2d 144, 148–49 (Iowa 2019). For our purposes, the following is enough. In October 2016, Albright lived with his girlfriend, K.H. One night, Albright used methamphetamine and marijuana before going into what he called a "blind rage"—paranoid about K.H.'s alleged infidelity. Throughout that night and into the morning, Albright repeatedly attacked K.H., using his hands, a cordless drill, a knife, and a stun gun. Albright's German Shepherd also bit K.H. on the leg and hip. K.H. tried to escape several times, but Albright blocked her or dragged her back.

The next afternoon, Albright forced K.H. into his truck when he took another dog to the veterinarian's office. On the trip, Albright continued to punch K.H. And he threatened, among other things, to "bury [her] up to [her] neck in a cornfield and let a combine take [her] head off and nobody would ever find [her]." After the vet visit, Albright stopped at a Casey's convenience store. While Albright was inside, K.H. fled to a Dollar General across the street. She borrowed a phone from the store clerk, locked herself in the restroom, and called 911. At the emergency room,

a nurse noted K.H.'s extensive injuries including two nose fractures. Her eyes were swollen almost shut and her dentures were broken.

The State originally charged Albright with kidnapping in the first degree under the "serious injury" alternative, a class "A" felony, in violation of Iowa Code section 710.1 and .2 (2016). The State also charged willful injury resulting in serious injury, a class "C" felony, in violation of Iowa Code section 708.4(1). But just before trial, it amended the willful injury count to causing bodily injury, a class "D" felony. Iowa Code § 708.4(2). And it amended the kidnapping enhancement to "torture" rather than "serious injury." *Id.* § 710.2(1). That charge remained a class "A" felony. Defense counsel, James Metcalf, did not object to those amendments.

The State built its case with testimony from K.H., as well as an emergency medical technician (EMT) who happened to be shopping at the Dollar General when K.H. entered, the hospital emergency room (ER) nurse, and several law enforcement officers. But K.H. was the only witness, other than Albright, to the events preceding her escape from the truck. The EMT testified that K.H.'s face was swollen and she had dried blood on her lips and ear. The nurse chronicled K.H.'s broken bones, cuts, and bruises. As part of the treatment, K.H. revealed that "her boyfriend had been beating her up since morning." The State also offered a slew of photographs of K.H.'s injuries.

For the defense, the strategy was to acknowledge that Albright committed willful injury causing bodily injury but to deny that he intentionally tortured K.H. for purpose of the kidnapping enhancement. Attorney Metcalf called Albright to the stand, as well as Albright's mother and a friend. But that strategy did not work.

The jury found Albright guilty of both charges. The court sentenced him to life in prison without the possibility of parole for the first-degree kidnapping offense, to be served concurrently with a five-year term for the willful injury conviction. The court also imposed various fines, surcharges, and other conditions, including restitution.

On direct appeal, the supreme court affirmed his convictions but remanded for the district court to fix a problem with the restitution order. *See Albright*, 925 N.W.2d at 158–62. The court preserved Albright's ineffective-assistance claims for PCR proceedings so that Metcalf could "defend" against allegations that he failed to perform as reasonably competent counsel. *Id.* at 158.

Albright filed this PCR application in October 2019. After a videoconference trial in the fall of 2020, the court denied relief. Albright appeals.

## II. Scope and Standards of Review

"We generally review a district court's denial of an application for postconviction relief for errors at law." *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021). For constitutional claims—such as ineffective assistance of counsel—our review is de novo. *See id.* To establish ineffectiveness, Albright must show his attorney failed to perform an essential duty, which created prejudice. *Id.*; *accord Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

On the first prong, we ask whether counsel acted within the normal range of competency, starting from the presumption that he did. *See State v. Cromer*, 765 N.W.2d 1, 7–8 (Iowa 2009). Albright "must rebut the presumption of competence by showing a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness." *State v.*

*Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019) (cleaned up). On that performance prong, we apply "prevailing professional norms." *Strickland*, 466 U.S. at 687–88. The applicant must show more than mere "improvident trial strategy, miscalculated tactics, mistake, carelessness or inexperience as viewed with the clarity of hindsight." *Cromer*, 765 N.W.2d at 8 (cleaned up). Counsel has no duty to raise a claim or make an objection that has no merit. *Id.*

On the second prong, an attorney's deficient performance causes prejudice when the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. It is not enough to show the error could have conceivably influenced the verdict. *State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015). Albright must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). "The ultimate question is 'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland*, 466 U.S. at 695). We may resolve the claim on either prong of the *Strickland* test. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

## III. Analysis

Albright raises seven grounds of ineffective assistance of counsel and one claim of cumulative prejudice.

### A. Defense strategy

Despite giving notice of an intoxication defense, trial counsel did not pursue an intoxication or diminished capacity defense at trial. Albright contends counsel should have advanced those defenses to negate the specific intent elements of

the charges. For kidnapping, the State had to prove Albright confined or removed K.H. "with the specific intent to inflict serious injury" on her and "intentionally subjected [her] to torture."[1] And for willful injury, the State had to show Albright "specifically intended to cause a serious injury" to K.H.[2] To support his contention, Albright presented the testimony of psychiatrist Donner Dewdney who opined at the PCR trial that the drugs Albright consumed, combined with his mental-health issues, made him unable to form specific intent.

These affirmative defenses were a route that attorney Metcalf considered. Several months before trial, Metcalf filed a notice of an intoxication defense. But when trial started, he withdrew that affirmative defense. At the PCR trial, Metcalf explained that his initial plan was to negate the specific intent elements by asserting Albright's intoxication. Metcalf did not intend to present expert testimony, only to have Albright on the stand. Metcalf testified he discussed the strategy with

---

[1] To prove its kidnapping and torture case, the State had to show:

      1. . . . [Albright] confined [K.H.] or removed her from one place to another.

      2. [Albright] did so with the specific intent to inflict serious injury upon [K.H.]

      3. [Albright] knew he did not have the consent or authority of [K.H.] to do so.

      4. As part of the confinement or removal [K.H.] was intentionally subjected to torture.

[2] To prove the willful injury causing bodily injury charge, the State had to show:

      1. . . . [Albright] committed acts upon [K.H.]

      2. [Albright] specifically intended to cause a serious injury to [K.H.]

      3. The acts of [Albright] caused bodily injury to [K.H.]

The court instructed the jury "torture" means "the intentional infliction of severe physical or mental pain." "Serious injury" means "a bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or extended loss or impairment of the function of any bodily part or organ." And "bodily injury" means "physical pain, illness or any impairment of physical condition."

Albright, who "wanted to tell the story." Metcalf also testified he considered a diminished capacity defense. He discussed Albright's mental-health and substance-abuse history with Albright's mother and with a psychiatrist in Minneapolis. But the doctor could not provide an opinion in support of those defenses, so Metcalf abandoned them.

After deciding not to pursue those defenses, and considering the State's strong case, Metcalf entertained a compromise position. After discussion with Albright, Metcalf decided the best strategy was to acknowledge that Albright committed willful injury causing bodily injury but to fight the kidnapping count.

> What he did do was willful injury, that he went into this blind rage when he found out she had been cheating on him, and we thought the jury would understand that. We thought the jury may come back with a willful injury finding and not a kidnapping . . . . [W]e knew that there was a risk in doing that, but that's the way he wanted to proceed, the way I wanted to proceed, and we did.

Albright also faults Metcalf for this decision.[3] Albright now argues the admission that he specifically intended to cause serious injury for the willful injury count let the State argue he had also conceded the "specific intent to inflict serious injury" element of kidnapping.[4]

---

[3] In his brief, Albright raised this alleged breach as a separate issue. But because counsel's decisions are intertwined as the defense strategy, it makes sense to consider them together.

[4] The State contends Albright did not preserve error on the specific consequence of the admission. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). But Metcalf testified about this consequence, and the district court considered the strategy of the admission as a whole and found it to be reasonable. We find error was preserved.

Granted, the defense strategy did not work. But does that mean Metcalf failed in an essential duty? No. "[T]hat lack of success does not amount to ineffective assistance of counsel." *Osborn v. State*, 573 N.W.2d 917, 924 (Iowa 1998). The State's evidence was persuasive. It included credible testimony from K.H. about the nature and duration of the physical attacks and verbal threats, along with corroborating evidence from other witnesses and many photographs of K.H.'s extensive injuries. Facing this tsunami of evidence, Metcalf decided it was best for Albright to acknowledge culpability for the class "D" felony but deny an intent to torture K.H. in hopes of avoiding life in prison for the class "A" felony conviction. "Tactical decisions such as this are immune from subsequent attack by an aggrieved defendant claiming ineffective assistance of counsel." *Id.*

Recall that Metcalf rejected the intoxication and diminished capacity defenses because his investigation found he could not support them with expert evidence. But Metcalf did try to use Albright's intoxication to his advantage. Albright testified that after consuming methamphetamine and alcohol that night he went into a "blind rage" over the cheating allegations. In closing, Metcalf argued that Albright's "blind rage" did not satisfy the first-degree kidnapping element of intentionally subjecting K.H. to torture. Metcalf's strategy was reasonable based on the circumstances and the strength of the State's case. *See State v. Majors*, 940 N.W.2d 372, 392 (Iowa 2020). Because Albright failed to prove a breach of duty, we end our analysis there. *See id.* at 393.

## B. Prior bad acts evidence

Another defense tactic was to have Albright take responsibility for his abusive behavior. To that end, Metcalf asked his client about a twenty-year-old

domestic abuse conviction against a different victim. Albright now contends that prejudicial information elicited by his own attorney "poisoned" the jurors against him.

The challenged passage followed Albright's admission during his direct exam that he struck K.H.

> METCALF: And you told a couple of people after all this that—including your friend who testified today—that you had hit her? A: Yes
> Q: Is that true?  A: I always speak the truth, sir.  Or try to.
> Q: I want you to think back to some earlier years because I think [the State] has a right to ask you this.  Have you ever gone to prison?  A: Yes, sir.  I have.
> Q: How many times?  A: Once.
> Q: And did you got to prison for domestic assault?  A: Yes, it was.

The trial prosecutor testified at the PCR trial—and the State concedes on appeal—that this information was likely inadmissible under Iowa Rule of Evidence 5.404(b)(1).[5]  But at the PCR trial, Metcalf explained that he and Albright wanted to flip that character evidence to persuade the jurors that Albright was aware of his "anger problems" and knew "he committed a willful injury.  He's never denied anything that he pled guilty to or testified to."  By being brutally honest about his assaultive behavior, and accepting responsibility for the less serious count, the defense hoped to convince the jury that he was not guilty of the more serious one.

True, in hindsight that strategy may appear risky.  But considering the State's overwhelming evidence that Albright brutally assaulted K.H., we cannot say it was unreasonable.  *See United States v. Lopeztegui*, 230 F.3d 1000, 1004 (7th

---

[5] That rule provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Iowa R. Evid. 5.404(b)(1).

Cir. 2000) ("[C]ounsel's choice to give some ground and focus the defense on the only arguably winnable count . . . was wise, not derelict."). So we affirm the PCR's rejection of this ground of ineffective assistance.

### C. Pretrial amendments and continuance

Next, Albright contends Metcalf should have objected to the State's motion to amend the trial information. On the eve of trial, the State moved to amend the willful injury count from a class "C" felony requiring proof of serious injury to a class "D" felony requiring proof of bodily injury. It also moved to replace the serious-injury enhancement with the torture alternative for first-degree kidnapping. The prosecutor explained that she did not have evidence to prove "serious injury" for either count. Metcalf did not object or request a continuance. Albright asserts that omission was constitutionally defective.

The State may amend a trial information "so as to correct errors or omissions in matters of form or substance." Iowa R. Crim. P. 2.4(8)(a). The district court must deny the request if the amendment prejudices "the substantial rights of the defendant" or charges "a wholly new and different offense." *Id.* Albright argues counsel should have objected on both grounds.

"[A]n amended trial information charges a wholly new and different offense when the new offense has different or additional elements and increases the potential punishment." *State v. Allen*, 965 N.W.2d 909, 911 (Iowa 2021). Here, both amendments involved different elements, but neither increased the potential punishment. In fact, the amended willful injury carried a lesser penalty, while the kidnapping charge remained an "A" felony. So the district court properly granted the amendments, and Metcalf had no duty to oppose them. *See State v. Schertz*,

330 N.W.2d 1, 2 (Iowa 1983) (holding court properly allowed amendment to allege different way to commit first-degree kidnapping).

Albright still faults Metcalf for not asking to continue the case. But Metcalf testified that after discussing the amendments with Albright, they decided the defense was prepared to proceed as planned. We cannot fault that reasoning. Albright cannot show a delay would have changed the defense strategy.

### D. Treatment provider vouching evidence

Generally, expert witnesses may not comment on the credibility of a witness. *See State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014). Albright claims Metcalf should have objected to vouching testimony by the ER nurse. Specifically, he complains about the prosecutor eliciting testimony that K.H. was believable when she said Albright held her "against her will." But the testimony Albright cites came from the EMT who happened to be shopping at the Dollar General when K.H. came in. The sheriff's deputy who responded to K.H.'s 911 call asked the EMT to look at her before an ambulance could arrive.[6]

Here, the district court addressed different statements by the ER nurse and not the EMT's testimony. So Albright's argument that Metcalf was remiss in allowing a medical professional to "vouch" for the fact that K.H. was held "against her will" was not preserved for our review. *See Meier*, 641 N.W.2d at 537. What is more, the State did not call the EMT as an expert witness. As a fact witness, she recounted statements K.H. made rather than commenting on their veracity.

---

[6] Albright's brief cites to the PCR trial transcript. That passage shows Metcalf commenting on testimony highlighted by PCR counsel citing volume II, pages 151–52 of the criminal trial transcript. The EMT's testimony appears on those pages of the criminal trial transcript.

Metcalf had no basis to object on vouching grounds. "Failure to raise a meritless issue does not establish counsel's performance was deficient." *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018).

### E. Lack of statement after arrest

Albright next contends Metcalf should have objected to statements by DCI agent Jim Thiele that Albright did not give a statement when he was arrested. That exchange looked like this:

> STATE: Did—Once [Albright] was arrested, did he give a statement to police? A: No. Once they located him and placed him under arrest for the willful injury, he was brought down to the Franklin County Sheriff's Office by DCI Agent Scott Reger.
> Q: But he did not give a statement? A: No, he did not.

Albright contends this line of questioning violated his Fifth Amendment right to remain silent, citing *Griffin v. California*, 380 U.S. 609, 612 (1965). Assuming without deciding counsel should have objected, we do not find the State's brief inquiry led to *Strickland* prejudice. *See generally State v. Johnson*, 219 N.W.2d 690, 698 (Iowa 1974) (upholding denial of mistrial when prosecution referred to defendant's failure to give statement to police before trial not on failure to testify). Given the strength of the State's case and Albright's willingness to testify at trial, we cannot conclude that but for counsel's failure to object there was a reasonable probability of acquittal.

### F. Stun gun witness

Albright next contends Metcalf should have called Jason Tyre as a witness. Albright asserts his friend Tyre would have testified that he took the stun gun from Albright two weeks before the assaults on K.H.

But at the PCR trial, Metcalf justified his decision not to put Tyre on the stand. The defense investigator did not find Tyre's claim to be credible. Metcalf explained that Tyre's story "did not hold water." Given his questionable veracity, counsel reasoned, "[W]e didn't want Mr. Tyre associated with our case. That would have been devastating." Counsel's calculations were prudent. *See State v. Polly*, 657 N.W.2d 462, 468 (Iowa 2003) ("Generally, the decision not to call a particular witness . . . to testify implicates a reasonable tactical decision."). We find no breach of duty.

### G. Cumulative prejudice

As a final shot, Albright contends Metcalf's many errors snowballed to spoil his chance of more favorable verdicts. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012) (recognizing "cumulative effect of ineffective assistance of counsel claims when analyzing prejudice"). We disagree. For all but one of Albright's ineffective-assistance claims, we rejected his contention that Metcalf performed below professional norms. We thus find no cumulative prejudice. We affirm denial of PCR.

**AFFIRMED.**